## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MILOSLAV MULLER,

    **Plaintiff,**

v.                                                      No. 13-CV-431 MCA/KK

TOM VILSACK, SECRETARY,
U.S. DEPARTMENT OF
AGRICULTURE, et al.

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Tom Vilsack's *Motion for Summary Judgment and Supporting Memorandum.* [Doc. 258] Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court hereby **GRANTS** the *Motion.*

## BACKGROUND

In this suit, Plaintiff *pro se* sues Secretary of the Department of Agriculture Tom Vilsack[1] and others for claims arising from Plaintiff's employment as a Veterinary Medical Officer and Area Epidemiology Officer with the Department of Agriculture, Animal Plant Health Inspection Services (APHIS) for the State of New Mexico.[2] [Doc.

---

[1] Mr. Vilsack is no longer the Secretary of the Department of Agriculture. The Agency has not yet moved to substitute the current Secretary of the Department of Agriculture.

[2] This is Plaintiff's second lawsuit against the Secretary of the Department of Agriculture arising from his employment. *Muller v. Vilsack et al.*, Civ. No. 12-1136 RB/LFG (D.N.M). Plaintiff moved to withdraw his previous complaint because he was unable to serve certain defendants (other than Vilsack). [Doc. 166, p. 2]

141, ¶¶ 23, 28]  Prior to filing this suit, Plaintiff filed three administrative claims concerning the matters in his *Second Amended Complaint* [Doc. 141]:  APHIS 2008-00060, APHIS 2008-00783, and APHIS 2008-00027.  Earlier in these proceedings, this Court dismissed Plaintiff's claims arising from Plaintiff's Administrative Complaint APHIS-2008-00060 (relating to Plaintiff's termination) as untimely because Plaintiff did not file those claims within the 30-day limitation period set forth in the Civil Service Reform Act.  [Doc. 141, ¶¶ 14-15; Doc. 166, p. 10]  Accordingly, the only claims remaining against Defendant Vilsack were set forth in Administrative Complaints APHIS 2008-0073 (hereafter Complaint 783) and APHIS 2008-00027 (hereafter, Complaint 27),[3] which both allege unlawful retaliation contrary 42 U.S.C. § 2000e-3.  [Doc. 141, ¶¶ 328-47]

After stating the controlling law, the Court sets out the facts pertaining to each complaint separately, along with the Court's analysis, below.

**ANALYSIS**

*Review of Pro Se Filings*

A district court must construe a *pro se* plaintiff's pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers.  *See McBride v. Deer*, 240 F.3d 1287, 1289, 1290 (10th Cir. 2001). While a district court may make some allowances if a *pro se* plaintiff fails to cite proper legal authority, confuses various legal theories, uses poor syntax and sentence construction, and is unfamiliar with

---

[3] The parties analyze these claims by Administrative Complaint, and the Court will do the same.

pleading requirements, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, *pro se* parties must follow the same rules of civil procedure that govern other litigants. *Id.*

### Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(a), (c). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (internal quotation marks and citation omitted). "Once the movant demonstrates no genuine issue of material fact, the nonmovant is given wide berth" to demonstrate that a factual controversy exists. *Id.* The Court views the evidence in the light most favorable to the nonmovant. *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). "Unsupported conclusory allegations, however, do not create an issue of fact." *MacKenzie*, 414 F.3d at 1273.

*Preliminary Issues*

Construing *Plaintiff's Response in Opposition to Secretary Vilsack's Motion for Summary Judgment* liberally, Plaintiff objects to the affidavits and declaration submitted by Defendant Vilsack *in toto* on the grounds that they are not made on personal knowledge. [Doc. 263, pp. 10-11] Despite the fact that Plaintiff fails to identify which portions of which affidavits/declaration are not made on personal knowledge, the Court has taken this objection into account. Accordingly, in setting out the facts, where the facts come from an affidavit or declaration, the Court has first determined that such facts were based on personal knowledge. *See, e.g.*, *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (stating that to have personal knowledge of a matter the witness must "have actually perceived or observed that which he testifies to" (internal quotation marks and citations omitted)).

Furthermore, Plaintiff argues that, at the time he filed his *Response*, he had pending motions to compel discovery he sought from Defendant Vilsack. Plaintiff specifically argues that he needs to obtain various evidence he sought pertaining to his allegation that one of his USDA co-workers engaged in fraud and that there was "an absolute collapse of the USDA's inspection activities for the presence of Scrapie infected sheep at Hunts Meats slaughter plant . . . that supplies mutton to residents of nearby Navajo Reservation." [Doc. 263, pp. 2-3] He states this evidence is "critical to Plaintiff's claim of reckless exposure of Native Americans to Scrapie prion proximately caused by the USDA, and . . . by the NMLB officials' deliberate failure to enforce the statutory Scrapie control and eradication program." []Doc. 263, p. 3] Plaintiff argues

4

that this evidence will demonstrate a material issue "related to USDA officials and State Defendants' liability for their racially-motivated retaliatory acts against Plaintiff, including their involvement in illegal activities." [Doc. 263, p. 5] Plaintiff also argues that he needed "sanitized fiscal documents that Plaintiff needs for comparison for lost overtime earnings." [Doc. 263, p. 3]

After Plaintiff filed his *Response*, Magistrate Judge Khalsa denied Plaintiff's motion to compel evidence regarding the Scrapie control and eradication program because the requested documents were irrelevant to Plaintiff's claims. [Doc. 276, pp. 3-4] The Court agrees. This case is about whether Defendant Vilsack retaliated against Plaintiff for engaging in activity protected by 42 U.S.C. § 2000e-3 (protected activity includes having "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter[,]" thereby pertaining to an unlawful employment practice). Evidence regarding the purportedly fraudulent activity by Plaintiff's co-worker and/or the Agency is immaterial to retaliation against Plaintiff for engaging in protected activity under Section 2000e-3, and thus would not establish any genuine issue of material fact allowing this Court to deny summary judgment. As to the overtime documents Plaintiff sought to compel, because the Court grants summary judgment on the ground that no unlawful retaliation occurred under 42 U.S.C. § 2000e-3, documents demonstrating damages[4] are irrelevant. Accordingly, Plaintiff's Rule 56(d) request is denied.

---

[4] Alternatively, Plaintiff may believe that these documents would demonstrate a materially adverse employment action by showing differential treatment of similarly

5

*Retaliation Claims Under 42 U.S.C. § 2000e-3*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to retaliate against an employee for engaging in protected activities. 42 U.S.C. § 2000e-3. A plaintiff can demonstrate unlawful retaliation under Title VII by either direct or circumstantial evidence. "[D]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (internal quotation marks and citation omitted); *see also Gorny v. Salazar*, 413 F. App'x 103, 107 (10th Cir. 2011) (unpublished decision) ("[D]irect evidence of retaliation is evidence, which if credited, does not require any inference or presumption to establish that unlawful retaliation motivated an employer's action."). No such evidence is present in this case. Because Plaintiff relies solely on circumstantial evidence, he must rely on the *McDonnell Douglas* three-step, burden-shifting framework. *See Twigg v. Hawker Beechcraft Corp*., 659 F.3d 987, 998 (10th Cir. 2011). At the first step in this framework, the employee must make out a *prima facie* case of retaliation by showing: "(1) [he or] she engaged in protected [conduct], (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (internal quotation marks and citation omitted).

---

situated employees. However, the Agency does not dispute that allowed other employees to attend the task force meetings, thus obviating the need for documentation.

The first prong of the *McDonnell Douglas prima facie* case is whether the employee engaged in protected conduct. An employee who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" has engaged in protected conduct. 42 U.S.C. § 2000e-3(a); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2522 (2013) (stating that Section 2000e-3 prohibits "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, unlawful workplace discrimination").

The second prong of the *McDonnell Douglas prima facie* case is that a "reasonable employee would have found the challenged employment action materially adverse." *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). An employer's action is materially adverse under Title VII if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). "The materiality of a claimed adverse action is to be determined objectively; petty slights, minor annoyances, and simple lack of good manners will not deter a reasonable worker from making or supporting a charge of discrimination." *McGowan*, 472 F.3d at 742 (internal quotation marks and citations omitted). The Court must decide whether an act alleged to be materially adverse meets this standard on a case-by-case basis. *Id.*

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. . . . A schedule change in an employee's work

schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.

*White*, 548 U.S. at 69 (internal quotation marks and citations omitted). Thus, with regard to changes in shift or work schedule, generally, the Court must decide whether such change is "a mere inconvenience or an alteration of job responsibilities [which is] not actionable." *McGowan*, 472 F.3d at 742 (internal quotation marks and citation omitted). Given this highly fact driven standard, at the summary judgment stage, the Plaintiff must point to facts which demonstrate that a change in work schedule was more than a minor annoyance. *See id.* at 742-43 (concluding that the plaintiff failed to demonstrate that a reasonable person would find the action of denial of a shift change to be materially adverse where the plaintiff relied only on her "undefined subjective preference" for a shift change).

With regard to causation, the third prong of the *McDonnell Douglas prima facie* case, in *Nassar*, our Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S.Ct. at 2528. Our Tenth Circuit has applied *Nassar*'s but-for causation test at *prima facie* stage of the *McDonnell Douglas* analysis. *Ward*, 772 F.3d at 1203 (stating that the plaintiff did not meet his burden of presenting a *prima facie* case where he failed to meet the but-for causation standard).

To establish a causal connection, [the plaintiff] must present "evidence of circumstances that justify an inference of retaliatory motive." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007). If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection. *Id.*

*Id.* Where the protected conduct took place significantly earlier, the Plaintiff must rely on additional evidence to establish causation. *Id.*; *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (noting that a three-month period between the protected conduct and the adverse action was too long for a fact-finder to infer causation). The plaintiff bears the burden of showing that the individual who took adverse action against him or her knew about the protected activity. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).

Once the plaintiff meets his or her burden of establishing a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. This burden is "exceedingly light." *See, e.g., Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007) (internal quotation marks and citation omitted). "To satisfy this burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999) (internal quotation marks and citation omitted). "By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, [the employer] sustain[s] [its] burden of production. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (10th Cir. 1993).

If the employer proffers a legitimate, non-discriminatory reason for taking an adverse action, the burden of persuasion then falls to the Plaintiff to demonstrate that the proffered reason is pretexual. "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's

proffered explanation is unworthy of credence." *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007) (en banc). "In establishing pretext, an employee can show the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) (internal quotation marks and citations omitted).

With these standards in mind, the Court first turns to considering the question of whether Plaintiff has met his initial burden of showing a *prima facie* case under the *McDonnell Douglas* test.

### **Complaint 783**

The Court sets forth the following material facts, which are either undisputed or viewed in the light most favorable to Plaintiff as the nonmovant. In Complaint 783, Plaintiff states that he complained of "continuous harassment and retaliation from the Agency's management showing a pattern of adverse actions," referring to three discrete events. For ease of discussion, the Court describes and analyzes each event before discussing the next event.

Plaintiff alleges:[5]

---

[5] The parties did not attach Plaintiff's administrative complaints or other documents pertaining to Plaintiffs administrative complaints as exhibits in their briefing on the Motions for Summary Judgment. In describing Plaintiff's complaints, Defendant Vilsack cites the *Second Amended Complaint.* [Doc. 258, ¶¶ 3, 5, 7] Plaintiff does not dispute Defendant's description of his administrative complaints. [Doc. 263] Thus, construing the facts in the light most favorable to Plaintiff, and liberally construing his filings given his *pro se* status, the Court recites verbatim Plaintiff's description of his administrative complaints set forth in the Second Amended Complaint and treats this description as an accurate statement of the administrative complaints.

329. Issue One: On May 30, 2008 at 4:46 p.m., Plaintiff sent an e-mail to Dr. John Belfrage, the USDA Western Regional Brucellosis Epidemiologist, requesting him to respond to the Plaintiff's e-mail sent two weeks earlier regarding the previously un-encountered issue of brucellosis testing in the field in New Mexico. Dr. Belfrage replied on June 3, 2008 at [9:01 a.m.] However, he refused to appropriately respond and to describe proper procedures Plaintiff asked to clarify. Dr. Belfrage had duty to clarify such issues, but he in bad-faith refused to do so in retaliation for the Plaintiff's EEO activity consisting from representing a member of Isleta Pueblo in his EEO complaint of racial discrimination against the USDA. (ROI 783 at Exh. A, page 2; 3).

[Doc. 258, ¶ 4; Doc. 141 (Emphasis added.)][6]   First, as it is not disputed, the Court assumes that Plaintiff engaged in protected activity, that is, representation of an employee in his EEO complaint.   However, Defendant Vilsack argues that:   Plaintiff has not identified a materially adverse employment action; Plaintiff cannot establish a causal connection between his EEO activity and Dr. Belfrage's actions; Dr. Belfrage has articulated a legitimate, non-retaliatory explanation for his actions; and Plaintiff failed to demonstrate pretext.   [Doc. 258, p. 13]   The Court agrees with Defendant on all arguments.

---

[6] Plaintiff cites the ROI (the Agency's Record of Investigation) in his Second Amended Complaint.   Neither party attached these portions of the administrative record to their filings.   It appears that Plaintiff attempted to file the entire ROI as a stand-alone document at the time he filed his Second Amended Complaint, however, the Magistrate Judge struck the documents Plaintiff attempted to file because "evidence should generally not be submitted in conjunction with pleadings" and the evidence was not relevant to the pending motions to dismiss.   [Doc. 92]   The Magistrate Judge did not err in striking these documents.   It would not be appropriate for this Court to now rely on properly stricken documents, and thus the Court will not do so.

First, the email exchange demonstrates that Dr. Belfrage advised Plaintiff under which circumstances various actions were warranted.[7]  [Doc. 258-6, p. 4]  Dr. Belfrage also told Plaintiff to "[m]ake a decision based on sound [judgment],"[8] that, given Plaintiff's education and training, he "should know what to do," [Doc. 258-6, p. 4] and "I am sure you can make the appropriate decision."  [Doc. 258-6, p. 1]  Nothing within these emails approaches an action which a "reasonable employee would have found . . . materially adverse."  *McGowan*, 472 F.3d at 742 (internal quotation marks and citation omitted).  While Plaintiff claims that Dr. Belfrage had a duty to "clarify such issues," [Doc. 141, ¶ 329] he has produced no evidence of such a duty, particularly given Plaintiff's education and professional duties.  Further, Dr. Belfrage's emails advised Plaintiff of the circumstances in which particular actions were appropriate.  Accordingly, no reasonable jury could conclude that these emails or Dr. Belfrage's statements were a materially adverse employment action.

Second, Plaintiff cannot demonstrate a causal connection between this event and Plaintiff's prior EEO activity.  The EEO activity which Plaintiff relies upon with regard to Complaint 783 is his "represent[ation of] a member of Isleta Pueblo in his EEO complaint of racial discrimination against the USDA."  [Doc. 141, ¶ 329]  However,

---

[7] Dr. Belfrage stated "[i]f supplemental work results in reactor classification, a trace is [warranted]" and "tracing out card positives with no other titers indicating that the animal could be affected should not initiate any other work."  [Doc. 258-6, p. 4]

[8] The Court notes that statements by various witnesses have typographical errors, spelling errors, punctuation errors, grammatical errors, and/or awkward phrasing.  To promote the ease of reading and in an effort to not interfere with the witness's or Plaintiff's word choice, the Court elects not to use "(*sic*)" or bracketed corrections with the exceptions of: misspelled words, apostrophe related errors, and the elimination of one aberrant comma.

Plaintiff has not provided the Court with details about this activity, including its date.[9]

Dr. Belfrage attests that he did not know about any of Plaintiff's prior EEO activity, and, rather than pointing to evidence which creates a factual dispute as to this knowledge, Plaintiff argues that the fact that Dr. Belfrage copied his email response to Plaintiff's supervisor demonstrates "that Dr. Belfrage was aware about [Plaintiff's] EEO activity." [Doc. 263, p. 13]  The Court concludes that no reasonable jury could draw the same conclusion.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (stating that the plaintiff must "come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity"); *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) ("[A]n inference is unreasonable if it requires a degree of speculation and conjecture that renders the factfinder's findings a guess or mere possibility." (Internal brackets, quotation marks and citations omitted)).

Third, Dr. Belfrage offered a legitimate, non-discriminatory explanation of why he responded the way he did.  He states that he knows that Plaintiff has an advanced university degree in epidemiology and had specialized training on evaluating brucellosis titers.  Plaintiff was the "Designated Brucellosis Epidemiologist for New Mexico for a

---

[9] Plaintiff attaches to his *Response* a letter from the USDA to the Governor of the Pueblo of Isleta addressing an Isleta tribal member's "allegations of discriminatory treatment by officials with our Animal and Plant Health Inspection Service."  [Doc. 263-1, p. 49]  This letter is dated June 23, 2003, i.e., approximately five years before Plaintiff's email exchange with Dr. Belfrage.  Thus, assuming this letter has something to do with Plaintiff's representation of the Isleta Tribal member, it occurred years before the alleged retaliatory acts, and thus no inference of causation can be made.  *See, e.g., Hinds*, 523 F.3d at 1204 (discussing the temporal proximity necessary for a causal inference; pointing out that three months or longer is insufficient).

number of years prior to 2005."  [Doc. 258-7, p. 1]  He stated that he did not have all of the facts, but Plaintiff did.  [Doc. 258-7, p. 2]  He stated that it was within Plaintiff's job description as the Designated Brucellosis Epidemiologist to "use his best judgment based on his overall knowledge of the cattle in his state" and that he would have supported Plaintiff's decision.  [Doc. 258-7, pp. 2-3]  In other words, Dr. Belfrage's legitimate, non-discriminatory reason for telling Plaintiff to use his best judgment was because it was Plaintiff's job to do so.

Finally, Plaintiff has not come forward with evidence of pretext.  Plaintiff states: "by significantly departing from the agency's policy that instructed Dr. Belfrage to help field epidemiologist with complicated issues, as such this one, is indicative of retaliatory pretext."  [Doc. 263, p. 13]  However, Plaintiff has not provided evidence of such policy.

In sum, for the above reasons, Plaintiff fails to meet his burden of establishing a *prima facie* case that Dr. Belfrage retaliated against him in violation of 42 U.S.C. § 2000e-3.  Alternatively, Plaintiff failed to demonstrate pretext.

Next, Plaintiff alleges:

330. On May 16, 2008, at 8:53 a.m., an Administrative Officer Mr. Tim Uding employed by the USDA at the Albuquerque Area Office, sent an e-mail to all agency's employees stationed in New Mexico notifying them about the availability of the USDA sponsored and funded Live Birds Marketing System. On May 22, 2008, Plaintiff approached Mr. Uding with a verbal request to help him with application for the above-cited training because he needed it for his professional development as an Area Epidemiology Officer in New Mexico. However, Mr. Uding responded that the Albuquerque Area Office had no money to send its employees to trainings.

331. Later on that day at 4:08 p.m., Plaintiff sent an e-mail to Mr. Uding with "cc" to his supervisor Dr. Paul Sciglibaglio, suggesting that in the

future not to advertise these types of training activities if the Albuquerque Area Office has no money to send employees on training. Neither Mr. Uding nor Dr. Paul Sciglibaglio responded to that e-mail.

332. Few days later, Plaintiff discovered that another USDA employee working under the same supervisor at Albuquerque Area Office, Ms. Jamie Wells, a friend of Dr. Paul Sciglibaglio who spent with him considerable amount of the time almost on daily basis at his office behind a closed door, and who is also involved in the issue of the Plaintiff's wrongful termination, was allowed to take training classes scheduled for next few months in the summer 2008.

333. Therefore, because the Agency had money for its employees training as shows the case of Ms. Wells, who is a similarly situated employee to Plaintiff in aspect to obtain career advancement, Mr. Uding in bad-faith falsely responded to the Plaintiff that the Albuquerque Area Office had no money to fund trainings, in retaliation for the Plaintiff's EEO activity representing a member of Isleta Pueblo in his EEO complaint of racial discrimination against the USDA.

[Doc. 141; Doc. 258, ¶ 4]  Again, the Court presumes that Plaintiff engaged in protected conduct. The Court also assumes that denying Plaintiff the opportunity to attend this training was an adverse employment action. *See White*, 548 U.S. at 69 (noting that excluding an employee from a training which "contributes significantly to the employee's professional advancement" may be a materially adverse employment action).  Defendant Vilsack does not argue that Plaintiff has not shown a causal connection at the *prima facie* stage, and Dr. Sciglibaglio admits that he knows of Plaintiff's prior EEO activity.  [Doc. 258, pp. 12-13; Doc. 258-4, p. 1]  Given that Defendant does not contest causation at the *prima facie* stage, and instead relies on the second and third steps in the *McDonnell*

*Douglas* analysis [Doc. 258, pp. 12-13], the Court does so as well, measuring the evidence against the but-for causation standard. *Ward*, 772 F.3d at 1203.[10]

Defendant's immediate supervisor, Dr. Sciglibaglio, attested that the poultry industry in New Mexico was not large enough to justify spending money to send anyone from New Mexico to Plaintiff's requested training. [Doc. 258-5, p. 2] Dr. Sciglibaglio stated that his Administrative Officer, Mr. Uding, sent the email advertising the training out while Dr. Sciglibaglio was out of the office, and that if he was in the office he would not have allowed the email to be sent. [Doc. 258-5, p. 2] Mr. Uding attested that no one from New Mexico went to that training and he testified that there was insufficient money in the poultry budget to send someone to the training. [Doc. 258-4, p. 2] This evidence is sufficient to meet Defendant's "exceedingly light" burden to show a legitimate, non-discriminatory reason for the employment action. *See DePaula v. Easter Seals El*

---

[10] *Ward* does not explicitly address whether, and when, the district court should consider the Defendant's proffered non-discriminatory reason for the employment action and the plaintiff's evidence of pretext. *Ward*, 772 F.3d at 1203-04. However, following *Ward*, our Tenth Circuit subsequently re-affirmed the *McDonnell Douglas* three-part test, and specifically reached its conclusion based on a lack of evidence of pretext in a Title VII retaliation case. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) Thus, this Court considers the second two steps of the *McDonnell Douglas* framework. It is noteworthy that other Circuit Courts have declined to adopt *Ward's* application *Nassar's* but-for causation test to the Plaintiff's *prima facie* case because doing so "'would be tantamount to eliminating the *McDonnell Douglas* framework in retaliation cases. . . . If plaintiffs can prove but-for causation at the *prima facie* stage, they will necessarily be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis. Had the *Nassar* Court intended to retire *McDonnell Douglas* and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect.'" *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (quoting *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015)).

*Mirador*, 859 F.3d 957, 970, 2017 WL 2529634, *8 (10th Cir. 2017) (internal quotation marks and citations omitted).

Plaintiff responds by arguing that the backyard poultry industry is important in New Mexico and that there was a zoonotic disease outbreak in El Paso in 2003. [Doc. 263, pp. 12-13] Plaintiff has not submitted record evidence, such as an affidavit or report, of either of these facts, and thus he fails to meet his evidentiary burden. Nonetheless, even if the Court were to assume that Plaintiff could establish these facts because Plaintiff is a veterinarian and epidemiologist, Plaintiff still cannot demonstrate pretext and thus he cannot meet *Nassar*'s requirement that he demonstrate that his protected activity was the but-for cause of the denial of his attendance at the training. "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) ("An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment. . . . The test is good faith belief."). Specifically, Plaintiff's evidence does not demonstrate that, at the time that Dr. Sciglibaglio denied Plaintiff's request to attend the training, Dr. Sciglibaglio knew or believed that the training was of sufficient importance to send someone from New Mexico to it. Accordingly, Plaintiff has not demonstrated pretext nor shown that his protected activity was the but-for cause of Defendant's employment action.

Plaintiff's final basis of retaliation alleged in Complaint 783 is:

334. On June 11, 2008, at 11:40 a.m., Plaintiff sent an e-mail to his supervisor Dr. Paul Sciglibaglio, requesting to submit the Plaintiff's name for the Designated Tuberculosis Epidemiology training class. Earlier on that day when reading the USDA Training Catalog, Plaintiff discovered that he as an Area Epidemiology Officer and a Designated Tuberculosis Epidemiologist for New Mexico, in accordance with the USDA policy he had to have this type of mandatory training at every two years. However, in contrary to the agency's own policy, Plaintiff realized that he received the last mandatory Designated Tuberculosis Epidemiology training three and half years earlier. However, Dr. Paul Sciglibaglio refused to respond to the Plaintiff's request in retaliation for the Plaintiff s EEO activity representing a member of Isleta Pueblo in his EEO complaint of racial discrimination against the USDA.

[Doc. 141; Doc. 258, ¶ 4]  Defendant argues: that Plaintiff has not demonstrated that the denial of Plaintiff's request to attend this training is a materially adverse employment action; that Defendant has articulated a legitimate non-retaliatory explanation for the Agency's action; and that Plaintiff has failed to demonstrate pretext.  [Doc. 258, p. 16] The Court assumes that the denial of the training was a materially adverse employment action.  Nonetheless, the Court agrees with Defendant's latter two arguments.

Plaintiff's immediate supervisor, Dr. Sciglibaglio, attested that he did not respond to Plaintiff's request because 1) he was already preparing to remove Plaintiff from his position, and he in fact issued the Notice of Proposed Removal two days after Plaintiff's email, putting Plaintiff on administrative leave at that time; and 2) Plaintiff had missed the deadline to register for the training by approximately three weeks.  [Doc. 258-5, pp. 2-3]  Both explanations are legitimate, non-discriminatory reasons for denying the training.  Plaintiff offers no argument or evidence that these reasons were pretextual. [Doc. 263; Doc. 263-1, pp. 5, 6]  Having failed to demonstrate pretext, Plaintiff cannot

demonstrate but-for causation. Accordingly, the Court cannot conclude that the complained of action was retaliatory.

In sum, Plaintiff has not met his burden of demonstrating a question of fact that any of the complained-of actions set forth in Complaint 783 were retaliatory contrary to 42 U.S.C. § 2000e-3, and thus Defendant Vilsack is entitled to summary judgment on these claims. *See Jones*, 169 F.3d at 1291.

**Complaint 27**

With regard to Complaint 27, Plaintiff states:

335. In this consolidated EEOC complaint there are nine issues that serve as a background evidence of the Agency's continuous harassment and intimidation of Plaintiff during the time period April 2007 until November 2007.

336. Issue One: On April 25, 2007 Plaintiff was ordered to complete cattle valuation for 101 [Cornerstone] Dairy cows by the end of April 30, 2007. However, Plaintiff was not qualified to do that task.

337. Issue Two: On April 25, 2007, the Agency commingled records of normal healthy cows from [Cornerstone] Dairy with records of TB positive cows that had to be indemnified, enormously increasing the amount of time needed for calculations.

338. Issue Three: On August 27, 2007, the Agency announced the Plaintiff's change tour of duty without discussing this subject with Plaintiff, causing him to travel to his work and back during the peak traffic hours.

339. Issue Four: On August 27, 2007, the Agency intentionally interfered with the Plaintiff's ability to participate in the daily TB Incident management meetings, critical for the [Plaintiff's] work performance.

340. Issue Five: On September 19, 2007, the Agency denied the Plaintiff's request for overtime to accomplish the labor intensive TB Task Force duties, while at the same time similarly situated employees could work overtime on the same issues.

341. Issue Six: On September 19, 2007, the Agency publicized to co-workers the[] denial of the Plaintiff's request for overtime.

342. Issue Seven: In early November 2007, the Agency cancelled previous approval of the Plaintiff's attendance at the Border Governor's Agricultural Worktable Functional Exercise needed for the Plaintiff's performance of his duties, while other similarly situated employees were allowed to attend.

343. <u>Issue Eight</u>: Between June 13 and September 22, 2007, the Agency intentionally wrongfully accused Plaintiff of violating regulations and allowing illegal movement of cattle from New Mexico to California.

344. <u>Issue Nine</u>: On July 12, 2007, during the performance review with the Proposing and Deciding Official, Plaintiff was informed that his new duties would include calculation of cattle values without obtaining the appropriate training.

[Doc. 141] The Court first addresses Issues 1-7 and Issue 9, as they primarily involve Dr. Sciglibaglio, Plaintiff's immediate supervisor. The Court addresses Issue 8 separately.

Defendant does not dispute that Plaintiff engaged in protected activity.[11] [Doc. 258-5, pp. 1, 3] Nonetheless, the Court assumes that Plaintiff engaged in protected activity. Defendant disputes that most of the actions of which Plaintiff complains were materially adverse. [Doc. 258, pp. 16-23] However, taking into account the facts disputed by Plaintiff and viewing the evidence in the light most favorable to him, the Court assumes that each of the actions described in Issues 1-7 and 9, alone and taken together, are materially adverse employment actions. [Doc. 263, pp. 13-16] Thus, the Court must consider whether Plaintiff has demonstrated causation. In doing so, the Court considers Defendant's proffered causal basis for the action (i.e., the legitimate, non-discriminatory basis for the action) and Plaintiff's responsive evidence, if any.

---

[11] In Dr. Sciglibaglio's Affidavit, he states: "I understand from the investigator that the Complainant contends he was discriminated against for engaging in protected activity by reporting in previous EEO cases that Michael Braman and I falsified our job applications and that Mr. Braman falsified other documents, including laboratory reports for scrapie prion detection, with my approval." [Doc. 258-5, p. 3] Plaintiff also refers to this alleged falsification by Mr. Braman, which Plaintiff contends "recklessly endangered health and well-being of Native Americans residing on Navajo Reservation," and was racially motivated. [Doc. 263, pp. 4-5]

Considering such evidence, the Court determines whether Plaintiff has proffered evidence of but-for causation. *Nassar*, 133 S.Ct. at 2528.

Defendant offers the following reasons for each employment action. As to Issue 1, Dr. Sciglibaglio's directive that Plaintiff value 101 cattle, Dr. Sciglibaglio states in his declaration that his understanding of Agency policy is that, contrary to Plaintiff's assertion, a compensation specialist was not required nor would the agency hire one except when dealing with large herds, i.e., 1000 head of cattle or more. [Doc. 258-2, ¶¶ 5-10] Dr. Sciglibaglio characterizes the Memorandum upon which Plaintiff relies as outdated, and he cites to an Agency Memorandum which replaced the Memorandum upon which Plaintiff relies. [Doc. 258-2, ¶¶ 11, 12] However, the replacement Memorandum was issued three months after Dr. Sciglibaglio assigned Plaintiff the task of valuation, making this argument unpersuasive. [Doc. 258-2, ¶¶ 4, 12] Dr. Sciglibaglio further states that he honestly believed that the task fell within Plaintiff's duties and also that Dr. Meyer, the "approving authority for indemnity requests," would review the value ascribed by Plaintiff. [Doc. 258, ¶¶ 12, 15] Because the Court defers to an employer's reasonable beliefs, this explanation is sufficient to articulate a legitimate, non-discriminatory basis for Defendant's action. Even if Dr. Sciglibaglio was incorrect as to Agency policy, Defendant nonetheless met his burden of stating a legitimate, non-discriminatory reason for the assignment. The Court's "role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young v.*

*Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006); *accord Rivera*, 365 F.3d at 924-25.

In Issue 2, Plaintiff accuses the Agency of intentionally comingling 68 healthy cow records with 101 potentially TB positive cow records. [Doc. 141, ¶ 337] In response, Defendant submits the affidavit of Dr. Sue Weston, Plaintiff's co-worker, who stated that: she was tasked with obtaining the records from the dairy; she asked the dairy only for the records pertaining to the 101 potentially TB positive cows; and the dairy only provided 101 records. [Doc. 258-8, pp. 3-4] However, Dr. Sciglibaglio appears to concede that the records given to Plaintiff included records for 169 cows. [Doc. 258-2, ¶ 18] Dr. Sciglibaglio states that it appears that, despite the Agency's request for only the records for the 101 cows,[12] the dairy provided records for 169 cows, but the Agency "does not have any control over the producer's records and how they are submitted to us." [Doc. 258-2, ¶ 18] Assuming Plaintiff was given 169 records, Plaintiff offers no evidence to dispute that Agency only requested the records for the 101 cows which were potentially TB positive. [Doc. 258-2, ¶ 18; Doc. 258-8, pp. 3-4] Moreover, Dr. Sciglibaglio stated that resolving the issue was a simple matter of cross-referencing the Agency's spreadsheet, and therefore the additional records did not "greatly increase the amount of work necessary to prepare the indemnity requests." [Doc. 258-2, ¶¶ 19-21] Thus, even assuming that the inclusion of 68 extra records within the records which Dr. Sciglibaglio asked Plaintiff to review was a materially adverse action, the Agency's

---

[12] This is an instance in which the basis of Dr. Sciglibaglio's personal knowledge is not given. However, his belief supports Plaintiff's case, and reviewing the facts in the light most favorable to Plaintiff, therefore the Court will not disregarded the statement.

description of the action as an unintended and unfortunate but minor issue is a legitimate, non-discriminatory explanation for the Agency's action.

In Issue 3, Plaintiff complains that his work hours were changed. [Doc. 141, ¶ 338] Dr. Sciglibaglio states that he changed Plaintiff's work hours from 9:00 a.m. to 5:30 p.m. to 8:00 a.m. to 4:30 p.m. [Doc. 258-2, ¶ 22] He states that he did so, along with changing other key personnel's hours to begin at 8:00 or earlier, "to better serve our Agency, State Officials and our stakeholders," including field staff "who began working earlier in the day." [Doc. 258, ¶¶ 22, 25] He stated that when Plaintiff was not in the office from 8:00 to 9:00 a.m., other employees would "have to try and field calls" without sufficient information, but those calls "could have been addressed by the Plaintiff had he been at the office earlier." [Doc. 258-2, ¶ 22] This is a legitimate, non-discriminatory explanation for the Agency's action.

In Issue 4, Plaintiff complains that when Dr. Sciglibaglio changed his work hours, the Agency also interfered with his ability to participate in daily Tuberculosis Taskforce Incident Management meetings, which lasted beyond 4:30. [Doc. 141, ¶ 339; Doc. 263, p. 14] Dr. Sciglibaglio responded by explaining that: he allowed Plaintiff to attend the meetings if he requested overtime in advance; Plaintiff was not a member of the taskforce—his participation was to allow him to gain experience, to provide assistance, and to be a resource to the taskforce if needed; that the taskforce moved to Clovis six weeks after it was formed because it was set up to deal with an infection in Clovis; and that the taskforce was created in July 2007 and disbanded in early November 2007. [Doc. 258-2, ¶¶ 27-31] Plaintiff responds by attaching Dr. Sciglibaglio's original email

containing the change in work hours for several employees, including Plaintiff, and which stated that employees must notify him in advance when requesting "a change in scheduled tour of duty hours" and that employees were not allowed to stay after hours or perform work duties on their own time. [Doc. 263-1, pp. 15-17] However, with regard to particular overtime requests to attend the TB taskforce meetings, while Plaintiff attaches evidence that Dr. Sciglibaglio denied his initial request for overtime "each working day," Dr. Sciglibaglio attached evidence showing that he ultimately approved Plaintiff's subsequent date-specific requests. [Doc. 263-1, p. 20; Doc. 258-3, pp. 5-8] It is difficult to find an adverse employment action here, because Dr. Sciglibaglio allowed Plaintiff to attend the meetings, even though he was not a taskforce member, and because Dr. Sciglibaglio ultimately approved Plaintiff's overtime requests. Nonetheless, the Court will assume that the *initial* denial of overtime was an adverse action. In this case, Defendant has offered three legitimate, non-discriminatory explanations for the action, specifically, that Plaintiff failed to make a specific overtime request, that Plaintiff was not a member of the taskforce, and that his attendance was not mandatory.

In Issue 5, Plaintiff states that he was denied an overtime request "to accomplish the labor intensive TB Task Force duties, while at the same time similarly situated employees could work overtime on the same issues." [Doc. 141, ¶ 340] The email chain provided by Dr. Sciglibaglio demonstrates that Plaintiff's overtime request was ultimately approved. [Doc. 258-3, pp. 5-8] Further, there is no evidence that the other employees to whom Plaintiff refers were not assigned to the taskforce. Plaintiff, however was not assigned to the taskforce and his attendance was voluntary, and therefore

Plaintiff has produced no evidence that he was similarly situated to the other employees. [Doc. 258-3, p. 6]   Defendant's explanation is a legitimate, non-discriminatory explanation of the Agency's action.

In Issue 6 Plaintiff complains that, when he emailed Dr. Sciglibaglio his initial overtime request pointing out, by name, two other co-workers whose requests were granted, Dr. Sciglibaglio copied those employees on his response denying Plaintiff's blanket overtime request.  [Doc. 141, ¶ 341; Doc. 263-1, p. 19]  Dr. Sciglibaglio states that, when he assumed his role as Area Veterinarian in Charge, he "instituted a policy that any written communication in which the author mentioned other staff members should also copy those staff members on it."  [Doc. 258-2, ¶ 35]  He states:  "I did not regard a request for overtime or it being granted or denied to be a confidential matter," and, therefore, he copied the employees Plaintiff had mentioned.  [Doc. 258-2, ¶ 35]  Dr. Sciglibaglio's policy is a legitimate, non-discriminatory explanation for his action.  *See St. Mary's Honor Ctr.*, 509 U.S. at 508-09 (explaining that the Court cannot conduct a credibility analysis of the proffered legitimate, non-discriminatory explanation, but that the fact-finder must make such determination in cases where the employee has proffered evidence of pretext, i.e., evidence demonstrating that the proffered reason was not the true reason for the employment decision, and that an unlawful reason was).

In Issue 7, Plaintiff complains that the Agency cancelled his previously approved attendance at a conference that was going "to address how the different offices throughout the state would coordinate in the event of some sort of emergency."  [Doc. 141, ¶ 342; Doc. 258-2, ¶ 36]  Dr. Sciglibaglio states that, after he had granted Plaintiff's

request to attend the conference, he learned that he would be out of the office. He also determined that another employee, the Area Emergency Coordinator, had the most compelling reason to attend the conference, given his duties. [Doc. 258-2, ¶ 36] Accordingly, since both Dr. Sciglibaglio and the Area Emergency Coordinator would be out of the office, Dr. Sciglibaglio determined that it was necessary for Plaintiff to remain in the office to "handle and endorse requests for export certificates," which must be acted upon promptly. [Doc. 258-2, ¶¶ 36-37] This is a legitimate, non-discriminatory explanation for the Agency's action.

In Issue 9, Plaintiff complains that Dr. Sciglibaglio informed him that "his new duties would include calculation of cattle values without obtaining the appropriate training." [Doc. 141, ¶ 344] Dr. Sciglibaglio responds he did not inform Plaintiff that he would "have to perform all of the indemnity value calculations as a regular part of his duties," but instead remarked about Plaintiff's "failure to follow instruction." [Doc. 258-2, ¶ 38] It appears that this is in reference to Plaintiff's prior protest of his assignment to calculate the indemnity value of 101 cows a few months before the performance evaluation. [Doc. 258-2, ¶¶ 4, 9, 21, 38] The Agency's explanation that it was discussing Plaintiff's failure to follow instructions is sufficient to state a legitimate, non-discriminatory explanation for the Agency's action.

Now the Court considers whether Plaintiff has rebutted Defendant's legitimate, non-discriminatory explanations for the above actions. Plaintiff offers no evidence which would allow a reasonable jury to disbelieve the proffered non-discriminatory explanations for the employment actions. [Doc. 263, pp. 14-16] Issue 1 is the only issue

for which Plaintiff has submitted evidence which is arguably in response to Defendant's legitimate, non-discriminatory explanation. Plaintiff submits a copy of an Agency Memorandum, apparently in effect at the time Plaintiff was asked to assign an indemnification value to the Cornerstone Dairy cattle, which states that "[p]rofessional appraisers (9 CFR 50.9) must be used whenever 10 or more animals are involved."[13] Even if Plaintiff could persuade a jury that his interpretation of the policy was correct, Plaintiff offers no evidence to dispute Defendant's evidence that Dr. Sciglibaglio "honestly believed that the task fell with the purview of [Plaintiff's] duties, and that the assignment was consistent with past practices and policies." [Doc. 258-2, ¶ 15] *See Young*, 468 F.3d at 1250 (stating that the Court does not second guess an employer's honestly held, even if erroneous, business judgment). Thus, with regard to Issue 1, as well as, Issues 2-7 and 9, Plaintiff has not pointed to evidence which would allow a jury to conclude that "defendant's explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

Further, even if Plaintiff's evidence were sufficient on its face to allow a jury to infer that Dr. Sciglibaglio knew that his directive to Plaintiff to value the Cornerstone Dairy cattle was contrary to Agency policy at the time he assigned the duty to Plaintiff,[14]

---

[13] Neither this Memorandum nor 9 C.F.R. § 50.9 define "professional appraisers," and Plaintiff does not identify the source of his claim that a "compensation specialist" must perform the evaluation. It is not clear that Plaintiff would not meet the definition of a professional appraiser. Further, as Plaintiff's valuation would be reviewed by "the approving authority for indemnity requests," there is no evidence that Dr. Sciglibaglio's order would have not complied with the Memorandum.

[14] The Court expressly holds that Plaintiff's evidence is insufficient to allow such an inference.

Plaintiff still fails to demonstrate but-for causation. Given that Plaintiff failed to identify the date of his protected activity, Plaintiff failed to submit evidence demonstrating either a close temporal proximity between the protected activity or evidence "tying the adverse employment actions to [the plaintiff's] participation in the EEOC proceedings." *Ward*, 772 F.3d at 1203. Plaintiff has not presented any "evidence of circumstances that justify an inference of retaliatory motive." *Id.* (internal quotation marks and citation omitted). "The evidence of but-for causation must be based on more than mere speculation, conjecture, or surmise." *Id.* (internal quotation marks and citation omitted). Applying *Ward*, Plaintiff failed to point to evidence upon which a jury could conclude that his protected activity was the but-for cause of the adverse actions identified in Issues 1-7 and 9, and therefore Defendant is entitled to summary judgment on those issues.

Finally, the Court addresses Issue 8, in which Plaintiff complains that "[b]etween June 13 and September 22, 2007, the Agency intentionally wrongfully accused Plaintiff of violating regulations and allowing illegal movement of cattle from New Mexico to California." [Doc. 141, ¶ 343] The actions of which Plaintiff complains involved, in part, Dr. Varner, who attested that he is the Area Veterinarian in Charge for California and Nevada, and that he has no direct organizational relationship to Plaintiff. [Doc. 258-9, p. 1] He further attested that he did not know of Plaintiff's prior EEO activity. [Doc. 258-9, p. 2] He explained that he was advised by a district office in California that some cattle, potentially having tuberculosis, had been shipped from New Mexico to California. Dr. Varner states that he called to speak to the New Mexico Area Veterinarian in Charge, i.e. Dr. Sciglibaglio, who was out, and thus he spoke to Plaintiff instead. [Doc. 258-9, p.

3]  He states that he does not recall the substance of the communications, including the emails, but that his actions were taken to carry out the Agency's mission to eradicate bovine TB and they had nothing to do with any prior EEO activity by Plaintiff.  [Doc. 258-9, p. 3]

Plaintiff submits several emails pertaining to this issue. [Doc. 263-1, pp. 24-40], The first email, dated June 13, 2007, from Dr. Varner to Dr. Sciglibaglio, discusses cattle which were identified on health certificates as "CFT responders,"[15] but the certificates also had hand-written notes that the cattle were cleared by Dr. Susan Weston, one of Plaintiff's co-workers.  Dr. Varner made the following inquiries to Dr. Sciglibaglio:

> 1. Could you confirm whether or not New Mexico contacted California Officials to gain their approval prior to this movement?
> 2.  What New Mexico DTE approved the movement?
> 3.  CDFA requests a copy of the Gamma results for the 15 head of CFT responders.
> 4. CDFA requests any epi information concerning the . . . Dairy[,] especially with reference to any connections to known infected herds in New Mexico.

[Doc. 263-1, pp. 38-39]  Dr. Sciglibaglio referred this email to Plaintiff, asking Plaintiff to respond to Dr. Varner.  [Doc. 263-1, p. 38]  Plaintiff responds, giving some background about the dairy and the cattle, as well as his understanding of the appropriate process.[16]  [Doc. 263-1, pp. 34-35]  Plaintiff stated that the process (which is not identified) was changed as a precaution in June 2007 "to clear all cattle out-of-state

---

[15] According to Dr. Varner, "[t]hese cattle are referred to as responders, that is, they have tested positively for bovine TB and are suspected of having the disease even though it has not been conclusively established that they have it without further testing."  [Doc. 258-9, p. 2]

[16] Dr. Weston also responds, explaining the documents she had and the process she used. [Doc. 263-1, p. 36]

movements from herds that had one or more CF responders, through Area Epidemiology Officer." [Doc. 263-1, p. 35] Dr. Varner forwarded this information to other individuals, including Dana Nelson, an Area Epidemiology Officer for California and Nevada. [Doc. 263-1, pp. 33-34] Dana Nelson then sent an email to several people, including Plaintiff, Dr. Sciglibagio, Dr. Varner and others, in which he or she: called the shipment of the cattle "illegitimate;" raised a concern that the cattle had now been dispersed through central California; requested brand information to track the cattle; and raised a concern with the process used and the failure to consult "receiving state stakeholders." [Doc. 263-1, p. 33] The next day, Dana Nelson sent another email stating that he or she had spoken with Dr. Meyer and Plaintiff and was "now more comfortable" with New Mexico's policies and that they have been adjusted to conform to Agency requirements. [Doc. 263-1, p. 32] Thereafter, Plaintiff sent two emails, one to Dr. Meyer on July 18, 2007, and one to Dr. Varner on September 21, 2007, each containing more historical information about the cattle and their vaccination history, and each questioning the assertion that New Mexico officials should have contacted California officials for approval prior to shipping the cattle. [Doc. 263-1, pp. 29-32] Plaintiff provides no other evidence pertaining to Issue Eight.

Plaintiff makes the following argument with regard to Issue 8:

Dr. Varner initiated a 3-months long pattern of harassment and intimidation of Plaintiff, based on fully fabricated charges as asserted by Plaintiff in this instant civil action, Dr. Varner, in cooperation with Plaintiff's chain-of-command, intentionally subjected Plaintiff to adverse acts that sent on Plaintiff "chilling effect". By charging Plaintiff with fabricated accusations that were not based on any agency's policies, Dr. Varner and Plaintiff's

> chain-of-command, significantly departed from the agencies own policies
> and regulation, indicative of retaliatory pretext.

[Doc. 263, p. 16]

Plaintiff's arguments are not well-taken. First, Plaintiff fails to point to a materially adverse employment action. *See Davis v. NYS Dept. of Corrections*, 46 F.Supp.3d 226 (W.D.N.Y. 2014) (concluding that an allegation, even if false, which does not result in any negative consequences is not a materially adverse employment action); *Boyd v. Presbyterian Hosp. in City of New York*, 160 F.Supp.2d 552, 537 (S.D.N.Y. 2001) (same). Second, Defendant has submitted a legitimate, non-discriminatory reason for the emails, i.e, "carrying out the Agency's mission to eradicate bovine TB." [Doc. 258-9, p. 3] Third, Plaintiff fails to demonstrate causation. Plaintiff submits no evidence that anyone concerned with the cattle shipment knew about Plaintiff's protected activity. None of the documents Plaintiff provided on their face indicate that any of the persons raising concern with the cattle shipped to California were raising concerns because Plaintiff had engaged in protected activity. Nor does Plaintiff explain how the Agency's proffered explanation is pretextual. Thus, Defendant is entitled to summary judgment on Issue 8. *See Nassar*, 133 S.Ct. at 2517 ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

In sum, Plaintiff failed to meet his burden of demonstrating a "genuine issue as to any material fact" and, therefore, Defendant "is entitled to a judgment as a matter of law." *Jones*, 169 F.3d at 1291 (10th Cir. 1999); *accord* Fed. R. Civ. P. 56(a).

**CONCLUSION**

**WHEREFORE,** for the foregoing reasons, the Court **GRANTS** Defendant Tom

Vilsack's *Motion for Summary Judgment and Supporting Memorandum.* [Doc. 258]

**SO ORDERED** this 22nd day of September, 2017 in Albuquerque, New Mexico.


_____
M. CHRISTINA ARMIJO
Chief United States District Judge