IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MILOSLAV MULLER,

    Plaintiff,

v.                                             No. 13-cv-431 MCA-KK

TOM VILSACK, Secretary, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Daniel M. Manzanares, Dr. Dave Fly, Dr. Timothy J. Hanosh and Dr. Steven R. England's Motion for Summary Judgment*. [Doc. 257] Having considered the parties submissions, the relevant law, and otherwise being fully advised in the premises, the Court hereby **GRANTS** the *Motion*.

**BACKGROUND**

The facts set out below are either undisputed or supported by the record and viewed in the light most favorable to Plaintiff.

In this suit, Plaintiff *pro se* sues "Dr. Steven R. England, in his individual capacity as a former Veterinarian of the New Mexico Livestock Board" [Doc. 141] and others,[1] for acts that Plaintiff alleges contributed to Plaintiff's termination. During the period relevant to this case, Plaintiff was employed by the United States Department of

---

[1] Plaintiff also sued Tom Vilsack, Secretary of the U.S. Department of Agriculture, Daniel Manzanares (former Executive director of the New Mexico Livestock Board), Dr. Dave Fly (the New Mexico State Veterinarian) and Dr. Timothy Hanosh (New Mexico Deputy State Veterinarian). [Doc. 141] In prior *Orders*, the Court has dismissed the claims against all other Defendants. [Doc. 271; Doc. 305]

Agriculture as a Veterinary Medical Officer and the Area Epidemiology Officer. [Doc. 257, ¶ 1] Defendant Dr. Steven England was employed in a managerial position with the New Mexico Livestock Board. [Doc. 257, ¶ 2] In May of 2007, Dr. England wrote an email to Plaintiff's supervisor, Dr. Paul Sciglibaglio. [Doc. 262, p. 16] This email[2] stated:

> Dr. Sciqlibaglio: this is in regard to Dr. Miloslav Muller's performance as our designated epidemiologist. In my opinion he is incapable of doing this job. When we had the Mitchel Dairy become infected and we spent a year drafting a regionalization plan As NM State Veterinarian I had to bring Dr. Terry Beals in to do the epi portion because nothing was being done by Dr. Muller. In fact we had contacted Dr. Weston numerous times for information and she told us she had forwarded it all to Dr. Muller . Dr. Beals went to the APHIS office and found all the information she had sent in a box in his office that he didn"t seem to know what to do with it or even if it was there. Dr. Beals went ahead and did the basic epi work so we could complete our request. However the follow up on Mitchell Dairy has never been completed to my knowledge. In dealing with Cornerstone dairies responders—at our regular bi-weekly TB meeting it was obvious when he was told to do the indemnity appraisal he had no idea how to do it and did not understand basic production records  Dr. Sciqlibaglio instructed him to do this at the local level and not to go to CEAH or.region for help but simply do it in house—it was obvious to me he wouldn"t be able to get close and time was of essence . Once again I enlisted outside help to get something that we and the owner could live with so we could these cows killed. Dr. Beals basically did the epi work on B23 outbreak. We are now looking at two dairies in the Clovis area that will require a lot of epi work. We have contracted with Dr. Beals to work on the epidemiology as I have no faith in Dr. Muller"s ability to do the job. Dr. England

[Doc. 257-1, p. 14] Three other employees of the New Mexico Livestock Board (the other three state Defendants) and one contract employee, Dr. Beals, also wrote letters to

---

[2] The Court has not corrected any typographical, punctuation, spelling, or grammatical errors within the email.

Dr. Sciglibaglio in May raising concerns about Dr. Muller's job performance. [Doc. 257, ¶ 6; Doc. 257-1, pp. 15-17, 20-21; Doc. 262, p. 17]

Dr. England wrote his email to Dr. Sciglibaglio less than two months after Plaintiff made protected disclosures during an administrative proceeding before the EEOC. [Doc. 257, ¶ 8] The referenced disclosures appear to be that Michael Braman, a USDA employee, falsified his time sheet and failed to report to work, potentially exposing hundreds of residence of the Navajo Reservation to Scrapie prion. [Doc. 257, ¶ 8; Doc. 262, 3-4, 12]

Subsequently, on June 13 2008, Dr. Sciglibaglio issued a Proposal to Remove Plaintiff from employment with the USDA. [Doc. 257, ¶ 3] The proposal listed 71 specifications of improper conduct by Plaintiff. [Doc. 257, ¶ 3] Specification 69 was the sole specification concerning Dr. England and his co-workers. [Doc. 257, ¶ 5] Specification 69 cited Plaintiff's alleged failure to maintain a good working relationship with NMLB officials and was supported by the letters sent by Dr. England's co-workers and the email sent by Dr. England. [Doc. 257, ¶¶ 5, 6] Based on the proposal of Dr. Sciglibaglio, Dr. Jerry Diemer, the Associate Regional Director for Veterinary Services, rendered the decision to terminate Plaintiff's employment. [Doc. 257, ¶ 4; Doc. 262-1, p. 40]

**ANALYSIS**

*Review of Pro Se Filings*

A district court must construe a *pro se* plaintiff's pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *See*

*McBride v. Deer*, 240 F.3d 1287, 1289, 1290 (10th Cir. 2001). While a district court may make some allowances if a *pro se* plaintiff fails to cite proper legal authority, confuses various legal theories, uses poor syntax and sentence construction, and is unfamiliar with pleading requirements, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, *pro se* parties must follow the same rules of civil procedure that govern other litigants. *Id.*

*Summary Judgment*

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(a), (c). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (internal quotation marks and citation omitted). "Once the movant demonstrates no genuine issue of material fact, the nonmovant is given wide berth" to demonstrate that a factual controversy exists. *Id.* The

Court views the evidence in the light most favorable to the nonmovant. *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). "Unsupported conclusory allegations, however, do not create an issue of fact." *MacKenzie*, 414 F.3d at 1273.

### *New Mexico Human Rights Act Retaliation Claim*

Plaintiff sues Dr. England under N.M.S.A. 1978, § 28-1-7(I), which states that it is unlawful for "any person or employer to: . . . (2) engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act." [Doc. 141, ¶¶ 323-24] Individual defendants can be sued under the New Mexico Human Rights Act, *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 12, 22 P.3d 1188, and the Court has already rejected Defendant England's argument that Plaintiff failed to exhaust his administrative remedies against Dr. England. [Doc. 271]

"To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity, (2) he was subject to adverse employment action subsequent to, or contemporaneous with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 11, 127 P.3d 548. New Mexico Courts apply the *McDonnell Douglas* burden shifting test to retaliation claims. *Gonzales v. New Mexico Dep't of Health*, 2000-NMSC-029, ¶ 21, 11 P.3d 550. "[A] plaintiff bears the initial burden of establishing a prima facie case; once the prima facie case is established, the employer bears the burden of producing evidence of a legitimate, nondiscriminatory

reason for its action; and finally, a plaintiff must be afforded an opportunity to rebut the employer's proffered reason." *Id.*

Defendant England moves for summary judgment pursuant to Rule 56(a), on the ground that "there is no genuine dispute as to any material fact and [therefore England] is entitled to judgment as a matter of law."[3] [Doc. 257, pp. 16-19] Defendant England argues that Plaintiff cannot establish a case of retaliation because he failed to produce evidence that he engaged in a protected activity and he cannot establish a causal connection between any alleged protected activity and the adverse employment action. [Doc. 257, pp. 17-18]

Defendant England first argues that Plaintiff has not established that he engaged in protected activity. The Court is not persuaded by this argument. It is not disputed that Plaintiff filed complaints with the EEO and that he "made disclosures" in an EEO proceeding on March 31, 2007. [Doc. 257, ¶ 8] These activities meet the statutory definition of a protected activity. 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, *or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter*." (Emphasis

---

[3] By previous *Order* [Doc. 271, pp. 13-14], the Court already considered and rejected additional arguments made by Defendant England, including that the State Defendants are entitled to qualified immunity and that Plaintiff's NMHRA claims are barred by the statute of limitations. [Doc. 257, pp. 10, 15] Further, because the Court concludes, herein below, that Defendant England is entitled to summary judgment on Plaintiff's NMHRA Retaliation Claim, the Court does not address Defendant's argument regarding punitive damages under the NMHRA. [Doc. 257, p. 19]

added.)); N.M.S.A. 1978, § 27-1-7(I) (protecting from reprisal an employee who has "opposed any unlawful discriminatory practice").

Defendant England further argues that Plaintiff has not come forward with evidence that Mr. Braman harbored a discriminatory motive for his conduct, and he submits that "Plaintiff . . . testified that he has no evidence to support his opinion that [Mr. Braman's] alleged exposure of Native Americans to infectious scrapie prion was racially motivated." [Doc. 257, ¶ 22, p. 17] Defendant England therefore argues that Plaintiff has not come forward with evidence that his prior complaints were protected activities. However, for Plaintiff's conduct to be protected, Plaintiff needed only a "reasonable good-faith belief that the underlying conduct violated Title VII." *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003). Plaintiff was not required to have direct evidence that Mr. Braman's conduct was racially motivated at the time that Plaintiff made such complaints to reasonably believe, in good faith, that the conduct was racially motivated.[4] Thus, Defendant England has not met his burden of coming forward with evidence demonstrating that Plaintiff lacked a good faith belief that he was opposing an unlawful discriminatory practice or making a protected disclosure, and, accordingly, the Court cannot grant summary judgment on this ground.

---

[4] Defendant England argues that Plaintiff's evidence of Mr. Braman's motive in fact supports two theories (i.e., that Mr. Braman was motivated by financial gain or by discriminatory motive), and, therefore, his evidence tents to prove neither theory. [Doc. 257, p. 17] The Court does not address this argument because it is not grounded in the case law specific to determining whether a belief, particularly as to another's motives, is unreasonable in the context of discrimination cases. *See Smith v. FDC Corp.*, 1990-NMSC-020, ¶ 10, 787 P.2d 433 (recognizing that "often direct proof of discrimination is not available"). Defendant England fails to develop the argument that Plaintiff's belief was unreasonable in light of the applicable standard.

Defendant England next argues that Plaintiff cannot demonstrate a causal connection between his allegedly protected activity and the adverse employment action. [Doc. 257, p. 18] Specifically, he argues that Plaintiff has not produced evidence that Defendant England was actually aware of Plaintiff's allegedly protected disclosures. [Doc. 257, p. 18] The Court agrees with this argument. New Mexico Courts have not addressed whether the motivating factor or the but-for test applies to determine causation in an NMRHA retaliation claim. Even so, applying the less stringent motivating factor test, summary judgment is appropriate because Plaintiff has not come forward with evidence demonstrating that Plaintiff's participation in EEO complaints was a motivating factor in Defendant England's decision to write his email to Plaintiff's supervisor.

Plaintiff argues that he has circumstantial evidence that Defendant England "was fully aware about Plaintiff's EEO activity." [Doc. 262, pp. 9-10] Plaintiff states that, on March 22, 2006, he complained to Dr. Amy Butler about Mr. Braman's fraudulent activities, and, the next day, he was not allowed "to participate as an epidemiologist in Exit Conference related to New Mexico Scrapie Consistency Review." [Doc. 262, p. 10] Plaintiff argues that this constitutes evidence that the State Defendants were aware of his EEO activity. Plaintiff's argument fails both for lack of evidence—as he submits no documentary or testamentary evidence supporting his claims—and because the purported evidence is insufficient to allow an inference that Dr. England knew of Plaintiff's EEO activity or was motivated by it to write his letter. Plaintiff's brief, which implies that Dr. Butler was an employee of the USDA and not the NMLB [Doc. 262, p. 10], is lacking any explanation of the connection between Dr. Butler's knowledge of Plaintiff's

complaint and Defendant England's action. Plaintiff asserts that Dr. Butler made Dr. Fly (Dr. England's supervisor) aware of "Plaintiff's advocacy on behalf of residents of Navajo Reservation," but this unsupported assertion does not draw any connection between Dr. Butler's knowledge and Dr. England. Further, Plaintiff does not state who prevented him from participating in the Exit Conference, i.e., whether it was Dr. England, another NMLB employee, or his own supervisor. And, even if somehow the Court could conclude (and it cannot) that Dr. England knew of Plaintiff's 2006 disclosures to Dr. Butler about Mr. Braman, circumstantial evidence of any causal connection is lacking because there is no temporal proximity between this activity and Dr. England's May, 2007 email. Likewise, though Plaintiff mentions that he was suspended on April 13, 2006 [Doc. 262, p. 11], again, he fails to draw any connection between that suspension (by his USDA supervisor) and Dr. England's act of writing his email to Plaintiff's supervisor over a year later. Accordingly, none of Plaintiff's unsupported arguments are sufficient to meet his burden of producing some evidence of that his protected activity was a motivating factor in Dr. England's email. *MacKenzie*, 414 F.3d at 1273 ("Unsupported conclusory allegations . . . do not create an issue of fact.").

Plaintiff next argues that he has "strong circumstantial evidence of retaliatory motives that was behind writing of those publications [referring to Dr. England's email and his coworker's letters]" because they were written less than two months after he made protected disclosures during an administrative proceeding before the EEOC. [Doc. 262, p. 12] Again, however, there is no argument or evidence to support the notion that Dr. England or any of his co-workers were aware that Plaintiff had made these

9

disclosures. Accordingly, Defendant has demonstrated that summary judgment on Plaintiff's retaliation claim is appropriate. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that summary judgment was proper where there was no indication that person taking adverse action knew about the purportedly protected activity); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (stating that a supervisor's knowledge that the employee engaged in protected activity "is critical" to a retaliation claim"); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("[P]laintiff must show that the individual who took adverse action against him knew of the employee's protected activity"). Finally, Plaintiff submits that Dr. England willingly made "materially false statements" with the purpose of getting Plaintiff fired. Even if the Court were to conclude that a factual issue exists as to whether the statements in Dr. England's email were materially false, this alone is insufficient to demonstrate that Dr. England made false statements in retaliation for Plaintiff's protected activity. *C.f. Juneau*, 2006-NMSC-002, ¶ 14 ("The NMHRA protects against discriminatory treatment, not against general claims of employer unfairness.").

Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case of retaliation by Defendant England as prohibited by the New Mexico Human Rights Act. Therefore, the Court **GRANTS** summary judgment against Plaintiff and in favor of Defendant England.

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Court hereby **GRANTS** *Defendant's Daniel M. Manzanares, Dr. Dave Fly, Dr. Timothy J. Hanosh and Dr.*

10

*Steven R. England's Motion for Summary Judgment* [Doc. 257] on the sole remaining claim against the sole remaining State Defendant, Dr. England.

**SO ORDERED** this 22nd day of September, 2017 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge